UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 18-CV-20788-SCOLA

DELORES BENTLEY MITCHELL,

        Plaintiff,

v.

CARNIVAL CORPORATION,

        Defendant.
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE ("Carnival"), by and through its undersigned counsel, and pursuant to Rules 7.1 and 56.1 of the Local Rules governing the Southern District of Florida and Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully moves the Court for entry of Summary Judgment in its favor, and as grounds therefore, states as follows:

### INTRODUCTION

This is a maritime personal injury (slip and fall) claim, in which Plaintiff alleges she sustained injuries while a passenger aboard Defendant's vessel *Carnival Triumph*. Defendant contends Plaintiff fails in her burden of proof and her claims fail as a matter of law. Specifically, there is no record evidence that Defendant had actual or constructive notice of the condition which Plaintiff alleges caused her fall.

**STATEMENT OF MATERIAL FACTS**

1. Plaintiff, Delores Bentley-Mitchell, was a passenger on board Defendant's vessel, Carnival Triumph on July 17, 2017. [DE 1 – Plaintiff's Complaint for Damages].

2. At approximately 7:30 a.m. on July 17, 2017, which was debarkation morning at the end of Plaintiff's cruise, Plaintiff and her sister, Veronica Bentley, walked from a carpeted elevator lobby on the Promenade Deck, through open doors, and across a tiled floor in the casino lobby. [Exhibit A: Depo. Of Plaintiff, Delores Bentley-Mitchell Pg. 73 Lines 21 – 24; Pg. 97 Lines 9 – 24; Pg. 84 Lines 13 to Pg. 85 Line 13 and Defendant's Composite Exhibit 1 A-D thereto; and Exhibit B:  Affidavit of Monica Petisco, Litigation Representative of Carnival Cruise Line].

3. Veronica Bentley walked ahead of Plaintiff across the tiled floor.  [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 97 Line 9 – 15; Pg. 102 Lines 18 – 21].  Veronica Bentley did not slip or lose her balance as she walked through the area just prior to Plaintiff. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 103 Lines 4 – 7].

4. After Veronica Bentley walked through an area of tile in the casino lobby, Plaintiff, who was directly behind her sister, slipped and fell forward.   [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 105 Line 2 - 7].

5. Plaintiff had taken approximately ten steps across the tile and did not observe any areas of the tiled casino lobby to be wet or slippery before the point of her fall. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 102 Lines 14 – 17; Pg. 103 Lines 22 – 25; Pg. 105 Lines 14 – 18].

6. After her fall, Plaintiff was assisted into a chair in the vicinity of her accident, and she took several photographs of the tiled floor before she was escorted to the infirmary. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 121 Lines 8 – 19].

7. Plaintiff took the photographs, within minutes of her fall, with the intention of capturing where she fell, but, none of the photographs that she took showed any visible wet areas of tile. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 125 Lines 13 – 22; and Pg. 143 Line 25 to Pg. 144 Line 9].

8. After Plaintiff fell, and a crew member came to assist her, Plaintiff observed that water came up around the tiles from underneath when the crew member stood on it with his weight. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 114 Lines 1 – 19; and Pg. 141 Line 12 to Pg. 142 Line 18].

9. Immediately after Defendant's crew member was alerted to a condition on the floor in the area of Plaintiff's fall, the Plaintiff observed the crew member respond by placing an absorbent cloth on the area at which Plaintiff fell, by placing a warning sign at the location, and cordoning off that area that had water. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 143 Line 7 – 24; and Pg. 145 Lines 10 - 15].

10. Plaintiff's sister, Veronica Bentley, later went back to the subject area and took more photos of subject area about 30 – 40 minutes after Plaintiff's fall. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 125 Line 23 to Pg. 126 Line 9; and Composite Exhibit 3 thereto].

11. **Plaintiff has no knowledge as to what caused the condition in the subject area, or how long it was there before her accident, or whether any Carnival employees were aware of any wetness in that area prior to her accident**. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 129 Line 21 to Pg. 130 Line 8].

> Q. Sure. My question is: Do you have any information from any source, anyone that was on the ship or -- with knowledge of the condition of the area as to why it was -- existed?
>
> A. Not to my knowledge.
>
> Q. Or what about how long it was there before your accident happened? Do you have any information about that?
>
> A. Not to my knowledge.
>
> Q. Did any Carnival employee, to your knowledge, indicate that they were aware that there was any wetness in that area prior to your accident?
>
> A. Not to my knowledge.

[Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 129 Line 21 to Pg. 130 Line 8].

12. Plaintiff had walked through this area of the casino approximately two to three times during the cruise and had never, to her knowledge, observed any water or moisture on the floor; nor had she ever observed the tiles in that area to be loose or in a state of disrepair. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 85 Line 25 to Pg. 87 Line 24].

13. Plaintiff's accident was captured on Closed Caption Television (CCTV) and the clip was preserved pursuant to Carnival's procedures as part of its investigation of Plaintiff's accident[1]. [Exhibit B: Affidavit of Monica Petisco].

14. Carnival had in place policies and procedures, in the exercise of reasonable care for its passengers, to reduce the risk of slip and fall accidents regarding conditions of which Carnival has notice. [Exhibit B: Affidavit of Monica Petisco].

---

[1] The CCTV video clip is Exhibit 11 to the Deposition of Monica Petisco, Carnival Cruise Line's Litigation Representative that was taken on December 18, 2018. The transcript has been ordered, but not received by the Defendant as of the date of filing this Motion for Final Summary Judgment. Defendant shall file same as a supplemental exhibit upon its receipt of same.

15. These procedures included the assignment of Housekeeping Personnel to patrol the subject area for purposes of cleanliness and identifying maintenance and repair issues. These procedures also included a policy called "Own The Spill", where all crew members are required to take action if they have notice of a wet or slippery condition on a walking surface. [Exhibit B: Affidavit of Monica Petisco].

16. In this case, Carnival did not have notice of the condition which Plaintiff alleges caused her fall, prior thereto. [Exhibit B: Affidavit of Monica Petisco].

17. In the CCTV clip and the still shot photographs taken therefrom, the tiled floor is visible in both the video and the photographs. [Exhibit B: Affidavit of Monica Petisco; Exhibit A: Deposition of Delores Bentley-Mitchell at Exhibit 1a-d].

18. In the visualized moments before Plaintiff's accident, there were no identifiable areas of wetness or other foreign substance anywhere on the tiled floor between the doorway and the location of her fall. [Exhibit B: Affidavit of Monica Petisco; Exhibit A: Deposition of Delores Bentley-Mitchell at Exhibit 1a-d].

19. The CCTV clip and the still shot photographs show other passengers present in the area, and a review of Carnival's records confirm that no one reported a slip and fall accident in the subject area on the morning of Plaintiff's accident prior thereto. [Exhibit B: Affidavit of Monica Petisco; Exhibit A: Deposition of Delores Bentley-Mitchell at Exhibit 1a-d].

20. The CCTV clip and the still shot photographs confirm that Carnival's staff placed a yellow warning sign to alert passengers to the presence of electrical equipment cords that were on the carpeted area of the casino for air freshening equipment that was in use. [Exhibit B: Affidavit of Monica Petisco; Exhibit A: Deposition of Delores Bentley-Mitchell at Exhibit 1a-d].

21. The CCTV clip and the still shot photographs also show a second yellow warning sign posted at the entrance of the doorway leading from the carpeted elevator lobby into the casino lobby area where Plaintiff fell.  [Exhibit B: Affidavit of Monica Petisco; Exhibit A: Deposition of Delores Bentley-Mitchell at Exhibit 1a-d].

22. There are only two reasons known to Carnival as to why this yellow warning sign was present at the entrance of the doorway leading from the carpeted elevator lobby into the casino lobby area at the time of the accident. [Exhibit B: Affidavit of Monica Petisco].

23. The first, and the most likely reason, is that the sign was placed there as part of the housekeeping cleaning crew's nightly routine cleaning.  At all times material hereto, the night shift housekeeping crew used auto scrubber machines to deep clean the hard floors on the vessel, including the subject area.  This nightly cleaning task was generally started after 1:30 a.m. and was completed within a few hours.  As part of the nightly hard floor cleaning procedure, yellow warning signs are posted in the area being cleaned.  The floors are scrubbed and then dried during the process.  After their work was complete, the night shift crew would generally leave a caution sign up at the subject entranceway from the carpeted to the tiled floor, and then the sign would be removed by the morning housekeeping staff sometime after they started their rounds at 7:00 a.m. [Exhibit B: Affidavit of Monica Petisco].

24. The second possible reason may have been that a crew member, in accordance with Carnival's "Own the Spill" policy, saw a condition at the entrance to the subject casino lobby, cleaned it, and put a sign on top of the spot where the spill was.  [Exhibit B: Affidavit of Monica Petisco].

25. There was not a yellow warning sign at the location where Plaintiff slipped because Carnival did not have notice of a condition at that location prior to the subject accident. [Exhibit B: Affidavit of Monica Petisco].

26. It was Plaintiff's accident that alerted Carnival to the fact that there was an apparent plumbing leak nearby that caused water to come up from underneath the tile in this area. [Exhibit B: Affidavit of Monica Petisco].

27. After Plaintiff's fall alerted Carnival's crew to the condition in the area, Carnival's crew members took steps to clean the water with absorbent pads, placed warning signs in the affected area, and were present in the area to alert passengers. This is seen in photographs taken by Delores Bentley-Mitchell and Veronica Bentley. [Exhibit A: Depo. Of Delores Bentley-Mitchell at Composite Exhibit 2 and 3].

28. The Chief Plumber was notified of the leak, repairs were made, and the process was documented in Carnival's Info Ship system where all work orders are created and maintained. [Exhibit B: Affidavit of Monica Petisco].

29. A review of Work Orders for repairs in the subject area from January 1, 2017 through the date of the accident revealed no prior problems with the flooring (ie, loose tile or grout) or water coming up through the floor at the location of Plaintiff's alleged accident. [Exhibit B: Affidavit of Monica Petisco].

30. A review of prior reported accidents in the subject area for the three years prior to Plaintiff's accident revealed no prior slip and falls due to water coming up through the floor or loose tiles in the subject area. [Exhibit B: Affidavit of Monica Petisco].

31. Plaintiff's Complaint alleges that "While walking through the ship's casino, Plaintiff fell after stepping on a loose tile and tile grout making up the flooring." [D.E. 1 at ¶ 11].

32. With regard to Defendant's alleged negligence, Plaintiff's Complaint alleges:

> 18. CARNIVAL was negligent as it breached its duty by:
> a. Failing to cordon off the areas were tile work or tile repair had recently been performed so that the tile and grout could properly set before allowing passengers to traverse the area;
> b. Failing to cordon off the areas where tiles and/or grout was loose;
> c. Failing to properly maintain the tiles and grout in a reasonable manner;
> d. Failing to properly install tile and/or grout on the subject deck;
> e. Failing to properly repair the tile on the subject deck
> f. Failing to post signs and/or making an announcement warning Plaintiff that the area was unreasonably dangerous and/or hazardous;
> g. Failing to post signs adequately warning that the area was unreasonably dangerous and/or hazardous for which it could be seen or heard by passengers walking in the area;
> h. Failing to replace tile and/or tile grout after becoming loose and/or not serviceable;
> i. Failing to otherwise warn Plaintiff that the area was unreasonably dangerous/hazardous condition of the area;
> j. Failing to provide a mat or other covering over the area to allow Plaintiff to safely traverse the area;
> k. Observing that the area was unreasonably dangerous but failing to rectify the condition;
> l. Failing to properly monitor and control the activities of people in an area especially a common area where Defendant knew or should have known is an area of high traffic and had continuous problems;
> m. Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one alleged in this action; and/or
> n. Failing to properly maintain the area in a safe and reasonable manner.

[D.E. 1 at ¶ 18]

33. There is no record evidence that Carnival had notice of loose tiles or a wet or slippery condition at the location of Plaintiff's fall prior thereto.

## MEMORANDUM OF LAW

**I. SUMMARY JUDGMENT IS DESIGNED TO DISPOSE OF FACTUALLY UNSUPPORTED CLAIMS.**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); *Hilburn v. Murata Electronics North America Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598 (1970). Once the moving party has met its burden, however, the party opposing the summary judgment may not simply rely on the pleadings or mere denials of the allegations; rather, the opposing party must adduce specific evidence showing that material facts are in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact"); *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010). A non-movant "cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. Sys.*, 448 F. App'x 17, 19 (11th Cir. 2011).

As the United States Supreme Court announced in *Celotex*, "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims..., and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id*. at 324.

## II.     PLAINTIFF FAILS TO PROVE THE ESSENTIAL ELEMENTS OF HER NEGLIGENCE CLAIM.

### A. THE ESSENTIAL ELEMENTS OF PLAINTIFF'S MARITIME NEGLIGENCE CLAIM.

It is well-established that the general maritime law of the United States governs suits asserted by passengers against cruise lines. *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1320 (11th Cir. 1989). To establish a negligence claim, Plaintiff must show that: (1) Carnival owed her a duty; (2) Carnival breached that duty; (3) Carnival's breach was the proximate cause of her injury; and (4) that she suffered damages. *Carroll v. Carnival Corp.*, 2013 WL 1857115 (S.D. Fla. May 3, 2013); *Weiner v. Carnival Cruise Lines*, 2012 WL 5199604 (S.D Fla. 2012); *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D. Fla. 2006). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [the] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *See Poole v. Carnival Corp.*, 2015 WL 1566415 (S.D. Fla. 2015); *Isbell*, 462 F.Supp.2d at 1236-37.

Ship owners or operators do not owe a heightened or special duty of care to their passengers; rather, the duty is one of reasonable care under the circumstances. *See Kermarec v. Compagnie Generate Transatlantique,* 358 U.S. 625, 630 (1959); *Everett v. Carnival Cruise Lines, Inc.,* 912 F. 2d 1355, 1358 (11th Cir. 1990)). A ship owner is not an all-purpose insurer of a passenger's safety. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984), cert. denied, 470 U.S. 1004, 105 S. Ct. 1357, 84 L.Ed.2d 379 (1985). A carrier's duty of reasonable care includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger. *Cohen v. Carnival*

*Corp.*, 945 F.Supp.2d 1351, 1357 (S.D. Fla. 2013) (internal citations omitted). The duty to warn, however, does not extend to dangers that are open and obvious. *Magazine v. Royal Caribbean Cruises, Ltd.*, 2014 WL 1274130, at *4 (S.D. Fla. March 27, 2014); *Luby v. Carnival Cruise Lines, Inc.*, 633 F.Supp. 40, 41 n.1, (S.D. Fla. 1986) (affirming dismissal of passenger's claim because the presence of a ledge behind a shower curtain was an open and obvious condition), aff'd, 808 F.2d 60 (11th Cir.1986).

The cruise line owes the duty to take corrective action to prevent passenger injuries only where it knows or should know of the dangerous condition. *Adams v. Carnival Corp.*, 2009 U.S. Dist. LEXIS 122822, *9-10 (S.D. Fla. 2009) (S.D. Fla. 2009). A cruise line owes the duty to warn its passengers of those dangers that "the cruise line knows or reasonably should have known," and "which are not apparent and obvious to the passenger." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F.Supp.2d 1308, 1315 (S.D. Fla. 2011).

To prove a breach of the cruise line's legal duties, the Plaintiff must show: (1) a dangerous condition existed; (2) Defendant was on actual notice of the dangerous condition; and (3) if Defendant did not have actual notice, it was on constructive notice that the dangerous condition existed for an interval of time sufficient to allow it to implement corrective measures. *Noble v. Carnival Corp.*, 2016 U.S. Dist. LEXIS 175005 (S. D. Fla. 2016) (citations omitted).

Where, as is the case her, the plaintiff relies on speculation and fails to prove a breach of the standard of care as Defendant did not have actual or constructive knowledge of the purported condition, the claim for negligence must fail and summary judgment is properly granted. *Mercer v. Carnival Corp.*, 2009 U.S. Dist. LEXIS 9093 (S.D. Fla. 2009); *Weiner v. Carnival Corp.*, 2012 U.S. Dist. LEXIS 151395, *6 (S.D. Fla. October 22, 2012).

## B. DEFENDANT DID NOT HAVE ACTUAL OR CONSTRUCTIVE NOTICE OF AN UNREASONABLY DANGEROUS CONDITION.

Plaintiff's complaint alleges that the sole dangerous condition at issue was "loose tile and tile grouting". [D.E. 1 at ¶ 11]. The Complaint makes no allegation of water on the floor being a condition that caused or contributed to Plaintiff's alleged accident. [D.E. 1]. However, assuming arguendo that an unreasonable hazard existed at the time of Plaintiff's fall (either loose tile &/or water on the floor at the location of Plaintiff's slip or fall accident), there is no evidence Defendant had actual or constructive notice of the hazard, which is fatal to Plaintiff's claim. As enunciated by the Eleventh Circuit in *Keefe*:

> [W]e hold that the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, ***a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition,*** at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure. *Keefe,* 867 F.2d at 1322 (emphasis added).

It is also well-settled that the burden rests with the plaintiff to prove notice, whether actual or constructive, as well as the existence of notice for a sufficient interval of time to allow for corrective action. *See generally Keefe,* 867 F.2d at 1322; *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65-66 (2d Cir. 1988); *Renau v. Shoreline Marine Sightseeing Co.,* 1986 WL 1589 (N.D. Ill. 1985). The "mere implication" of actual or constructive notice is insufficient to survive summary judgment. *See Adams v. Carnival Corp.*, 2009 U.S. Dist. LEXIS 122822 (S.D. Fla. 2009). Knowledge that the condition exists is not sufficient, the defendant must also know that the condition is dangerous. *Malley v. Royal Caribbean Cruises Ltd.*, 713 F.App'x 905, 907 (11th Cir. 2017). The fact that passengers can become injured does not put the ship

owner on notice of the specific risk-creating condition in a given case. *Taiariol v. MSC Crociere S.A.*, 677 Fed. Apps. 599, 601 (11th Cir. 2017).

Mere implication of actual or constructive notice is insufficient to survive summary judgment. *Adams,* U.S. Dist. LEXIS 122822 at *5 (finding that for the plaintiff to survive summary judgment, "mere implication of notice" was insufficient and that the plaintiff needed to show "specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action"). A plaintiff's own statements are insufficient to establish that a cruise line is on notice of a risk-creating or dangerous condition. *Cohen,* 945 F. Supp. 2d at 1357.

*Cohen* is instructive with regard to the notice issue. There, the Court found that the plaintiff had presented no evidence that the cruise line had actual or constructive notice of the alleged risk-creating condition posed by the steps at the end of the gangplank. *Cohen,* 945 F. Supp. 2d at 1355. Specifically, the Court noted:

> [T]here is no evidence in the record that Carnival knew or should have known that the gangplank posed any risk-creating condition for any passenger. There is no evidence in the record of any accident reports, passenger comment reviews or forms, or reports from safety inspections alerting Carnival of any potential safety concern at the steps at the end of their gangplanks.
>
> * * * *
> Cohen also appears to rely on his own deposition testimony that he did not see the steps before he fell. [record citation omitted] However, his own statements are insufficient to establish that Carnival was on notice of a risk-creating or dangerous condition.

*Cohen,* 945 F. Supp. 2d at 1356-57.

In *Monteleone,* 838 F. 2d at 63, the plaintiff sustained injuries resulting from a fall down a flight of stairs stemming from the plaintiff allegedly tripping over a protruding screw at the edge of one of the steps. *Id.* The Second Circuit Court of Appeals reversed the district court on grounds that the record did not support a finding that the cruise line had actual or constructive notice of the protruding screw which allegedly caused the plaintiffs fall. As the Second Circuit held, "BCL's [the cruise line] liability properly turns on whether it had notice of the screw's protrusion. Since no one contends that BCL had actual notice, the issue becomes whether it had constructive notice." *Id.* at 65. The appellate court went on to accept the district court's findings that the screw in question was, in fact, protruding and that the plaintiff tripped on it. *Id.* However, as no witness testified to seeing the protruding screw prior to the accident," the Second Circuit concluded:

> [W]e simply cannot conclude that BCL's failure to discover the condition of the protruding screw, assuming as we do that it existed prior to the fall and in fact caused the fall, constituted a lack of due care for which it should be held liable.

*Id*. at 66.

Similar to the plaintiffs in *Cohen* and *Monteleone,* Plaintiff fails to present any evidence that Carnival had actual or constructive notice of an alleged risk-creating condition posed by the alleged loose tile and grout and/or water coming up from underneath the tile. Plaintiff admitted that she had not observed any loose tiles or water in the subject area on the two to three prior occasions during the cruise that she had traversed same. [Exhibit A: Depo. of Delores Bentley-Mitchell Pg. 85 Line 25 to Pg. 87 Line 24]. Plaintiff admitted that she had taken approximately ten steps across the tile on the morning of her accident and did not observe any areas of the tiled casino lobby to be wet or slippery before the point of her fall. [Exhibit A: Depo. Of Delores

Bentley-Mitchell Pg. 102 Lines 14 – 17; Pg. 103 Lines 22 – 25; Pg. 105 Lines 14 – 18]. Plaintiff admitted that she has no knowledge as to what caused the condition in the subject area, or how long it was there before her accident, or whether any Carnival employees were aware of any wetness in that area prior to her accident. [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 129 Line 21 to Pg. 130 Line 8].

> Q. Sure. My question is: Do you have any information from any source, anyone that was on the ship or -- with knowledge of the condition of the area as to why it was -- existed?
>
> A. Not to my knowledge.
>
> Q. Or what about how long it was there before your accident happened? Do you have any information about that?
>
> A. Not to my knowledge.
>
> Q. Did any Carnival employee, to your knowledge, indicate that they were aware that there was any wetness in that area prior to your accident?
>
> A. Not to my knowledge.

[Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 129 Line 21 to Pg. 130 Line 8].

Additionally, Defendant searched to determine if there were any work-orders pertaining to flooring or plumbing issues affecting the flooring in the subject area for the period on January 1, 2017 through the date of accident, and found none. [Exhibit B: Affidavit of Monica Petisco]. Defendant also conducted a search for any accidents of slip and falls due to loose tiles or water coming up from underneath tiles in the subject casino lobby area for the three years prior to the alleged accident, and found none. [Exhibit B: Affidavit of Monica Petisco]. Defendant did not have notice of the subject condition, until **after** (as a result of) Plaintiff's alleged accident. [Exhibit B: Affidavit of Monica Petisco].

After Plaintiff's accident, Carnival immediately took action to remedy the situation by placing yellow caution signs, placing absorbent pads, cordoning off the area, and alerting the Chief Plumber to rectify the plumbing issue.  [Exhibit A: Depo. Of Delores Bentley-Mitchell Pg. 143 Line 7 – 24; and Pg. 145 Lines 10 – 15; and Exhibit B:  Affidavit of Monica Petisco].  The record is completely devoid of any evidence that Carnival had actual or constructive notice of the conditions alleged by Plaintiff prior to her accident, and as such, her cause of action must fail. Certainly if Defendant had notice of a plumbing leak that caused water to come up from underneath tiles in the subject area prior to Plaintiff's accident, it would have taken the aforesaid steps earlier to remedy the situation.  There is simply no prior actual or constructive notice of the condition here.

In this case, it is anticipated that Plaintiff will seek to circumvent the notice requirement and will ask the Court to infer or speculate Defendant's notice by virtue of a yellow caution sign at the doorway separating the carpet from tiled area of the casino lobby.  Binding precedent rejects Plaintiff's argument. *Pizzino v. NCL (Bahamas) Ltd.*, 709 Fed. Appx. 563 (11th Cir. 2017).  The operative facts of the incident in *Pizzino* are that the cruise guest slipped and fell on water that a crewmember allegedly spilled from a bucket.  The plaintiff argued there is no need to prove notice when the hazard was created by a crew member for which the defendant cruise line is vicariously liable. The Eleventh Circuit Court of Appeals rejected that argument, and it reiterated the notice requirement articulated in *Everett* and *Keefe*.  *Pizzino*, at *6-7. Binding precedent compels the Plaintiff to prove actual or constructive notice even when the alleged danger is claimed to have been created by one of Defendant's crew members. *Pizzino*, *supra*.  Notice to Defendant cannot be imputed inasmuch as it created the hazard. *Id.*  Therefore,

the *Pizzino* holding forecloses Plaintiff's efforts to avoid the notice requirement set forth in *Everett* and *Keefe*.

In this case, the mere presence of a yellow caution sign at the entrance of the casino lobby does not establish actual or constructive notice of a condition several feet away that was caused by a sudden, unexpected plumbing leak. The evidence is undisputed that the yellow caution sign was present in the doorway for only one of two reasons: 1) as part of the housekeeping cleaning crew's nightly routine cleaning; or 2) in accordance with Carnival's "Own the Spill" policy where a sign is put on top of a spill of which Defendant had notice. [Exhibit B: Affidavit of Monica Petisco].

Plaintiff lacks any evidentiary support to satisfy the obligation to prove Defendant had actual or constructive notice of the alleged hazard. Plaintiff presents no evidence of Defendant's notice whatsoever, other than the presence of a yellow caution sign several feet away, as addressed above. She fails to carry her burden of proof on the issue of notice.

## CONCLUSION

The undisputed evidence demonstrates that Plaintiff's negligence claim fails as a matter of law. The undisputed facts show Defendant did not have actual or constructive notice of the condition Plaintiff alleges. These deficiencies in proof are fatal to Plaintiff's negligence claim as a matter of law. As a result, summary judgment is properly entered in Defendant's favor.

WHEREFORE, the Defendant CARNIVAL CORPORATION respectfully requests this Court enter an Order granting its Motion for Summary Judgment and entering judgment in its favor.

DATED this 24th day of December, 2018.

Respectfully submitted,

DONNISE DESOUZA WEBB, ESQUIRE
CARNIVAL CORPORATION
3655 N.W. 87th Avenue
Miami, Florida 33178-2428
(305) 406-4838 Direct Phone
(305) 599-2600 Ext. 18024 Assistant's Phone
(305) 406-4732 Telefax
Dedicated Judge's Phone (305) 406-5399
(For Judges only)

By:   *s/ DONNISE DESOUZA WEBB, Esq.   .*
DONNISE DESOUZA WEBB, ESQ.
Fla. Bar No: 879398

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 24th, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generate by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   *s/ DONNISE DESOUZA WEBB, Esq.*
DONNISE DESOUZA WEBB, ESQ.
Fla. Bar No: 879398

## SERVICE LIST

KEITH S. BRAIS, ESQ.
Email: kbrais@braislaw.com
MICHELLE Y. GURIAN, ESQ.
Email: mgurian@braislaw.com
**BRAIS LAW FIRM**
9300 S. Dadeland Blvd., Suite 101
Miami, FL 33156
(305) 416-2901 phone
(305) 416-2902 fax
Counsel for Plaintiff, BENTLEY MITCHELL

DONNISE DESOUZA WEBB, ESQ.
Email: ddesouza@carnival.com
CARNIVAL CRUISE LINE
3655 N.W. 87th Avenue
Miami, FL 33179
(305) 599-2600 phone
(305) 406-4732 fax
Counsel for Defendant, CARNIVAL

[Service via CM/ECF Notice of Electronic Filing and via U.S. Mail]